**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

June 24, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:     *Tyler H. v. Frank Bisignano, Social Security Administration*
        Civil No. 1:25-cv-03348-JMC

Dear Counsel:

Tyler Hamilton ("Plaintiff") petitioned this Court on October 9, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claims for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 12, 14). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will affirm ALJ's and Appeals Council's determinations for the reasons explained below.

## I.     Procedural Background

Plaintiff filed his Title II application for DIB on August 30, 2021, alleging disability as of September 18, 2018. (Tr. 79-80).[1] Plaintiff's claim was denied initially on March 26, 2021, and again upon reconsideration on April 20, 2022. *Id.* at 78, 97. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *See id.* at 40-77. ALJ Scott Massengill conducted a telephone hearing on August 3, 2022. *Id.* The ALJ subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame on October 28, 2022. *Id.* at 7-32. The Appeals Council affirmed the decision on May 25, 2023. *Id.* at 1-6. Plaintiff filed an action for judicial review, and on August 4, 2024, the Court remanded the case for further administrative proceedings. *Id.* at 1843-1850.

An ALJ conducted a second telephonic hearing on July 15, 2025. *Id.* at 1804-1835. On August 1, 2025, the ALJ rendered a second decision denying Plaintiff's claim for DIB. *Id.* at 1783-

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

1796).  Plaintiff subsequently filed this second action for judicial review.

## II.    The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ (and subsequently the Appeals Council) followed the five-step sequential evaluation of disability set forth in the Secretary's regulations.  20 C.F.R. § 416.920.  "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work."  *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).  If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity.  *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)).  The claimant bears the burden of proof through the first four steps of the sequential evaluation.  If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience."  *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of September 18, 2018, through his date last insured of December 31, 2023.  (Tr. 1786).  At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral hips, lumbar radiculopathy, depression, anxiety, attention-deficit hyperactive disorder, and bipolar disorder (20 CFR 404.1520(c))."  *Id.*  The ALJ also found the following non-severe impairment:

> Further, the claimant had veinous insufficiency, a non-severe impairment. This impairment appears in the record, yet there is no evidence that it resulted in lasting sequelae. The evidence does not reveal that this impairment results in any work-related limitations (See Exhibits 36F/10, 14, 34, showing ablation of the veins in the bilateral lower extremities for edema). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and SSR 85- 28). As such, this impairment is non-severe.

*Id.* At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he could occasionally stoop, kneel, crouch, crawl, climb ramps or stairs and operate foot controls with the bilateral lower extremities. He could not climb ladders, ropes or scaffolds, or have excessive exposure to high exposed places. He required the opportunity to stand for one to two minutes after sitting for sixty minutes. He also required the opportunity to wear compression stocking. He could understand, remember, and carry out simple instructions that would not involve a specific production rate pace, such as assembly line work or an hourly production quota. He could have occasional interaction with coworkers, supervisors, and the general public.[2]

*Id.* at 1789.  The ALJ further noted that the Plaintiff had no past relevant work.  *Id.* at 1794.

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) Final Assembler (713.687-018) with approximately 11,000 jobs available in the national economy; (2) Assembler (706.684-030) with approximately 10,000 jobs available in the national economy; and (3) Stuffer (731.685-014) with approximately 4,000 jobs available nationally.  *Id.* at 1795.  Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from September 18, 2018, the alleged onset date, through December 31, 2023, the date last insured.  *Id.* at 1796.

## III.   Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards.  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance."  *Id.* (other citation and internal quotations omitted).  In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ."  *Id.*

## IV.   Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence.  Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination on several grounds: (1) the ALJ's finding that Plaintiff can perform sustained work activities is unsupported by substantial evidence; (2) the ALJ failed to follow the "slight abnormality" standard at step two; and (3) the ALJ's RFC determination fails to resolve an evidentiary conflict from Dr. Gray's "somewhat persuasive" opinion (ECF No. 12-1 at 7).  For the reasons that follow, the ALJ's determination is supported by substantial evidence.  As such, I will affirm the case.

---

[2] Due to the arguments Plaintiff advances, the Court will consider the relevant RFC analysis in greater detail below.

a.  The ALJ's RFC Sustained Work Activity Determination is Supported by Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)).  The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC.  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work."  *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted).  As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it."  *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311).  Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion."  *Id.* at 388 (cleaned up).  The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188.  A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."  *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).  Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022).  "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record."  *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

Plaintiff first argues that the record does not support a determination that Plaintiff can perform sustained work activities.  (ECF No. 12-1 at 8-9).  Social Security Ruling (SSR) 96-8p, instructs that an ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) , and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996).  The ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  *Id.* It is true that "[t]his Court has recognized that because 'an RFC determination implicitly contains a finding that

4

[a] plaintiff is able to work an eight-hour work day, the ALJ's failure to explicitly state that as part of the RFC is immaterial.'" *Timothy M. v. Kijakazi*, Civil No. 22-1246-BAH, 2023 WL 3280155, at *5 (D. Md. May 5, 2023) (quoting *Adrienne P. v. Kijakazi*, Civ. No. BPG-22-358, 2023 WL 2407394, at *3 (D. Md. Jan. 6, 2023)).  Thus, so long as the ALJ adequately evaluates a claimant's RFC, an opinion does not warrant remand for the mere failure to address a claimant's ability to perform work related activities at a sustained rate.  *See id.*  To that end, Plaintiff urges the Court to "remand this case so the ALJ can account for the [Plaintiff's] fluctuations in his mood due to depression, anxiety, attention-deficit hyperactive disorder, and bipolar disorder as well as his pain due to his physical impairments…" (ECF No. 12-1 at 13).  In support of his argument, Plaintiff relies on *Shelley C.* v. *Comm'r of Soc. Sec. Admin*, 61 F. 4th 341, 342 (4th Cir. 2023),[3] in which the Fourth Circuit criticized an ALJ's reasoning for cherry-picking the record and held that an ALJ may not rely exclusively on objective medical evidence to discredit a plaintiff's subjective statements about the limiting effects of depression.  In view of *Timothy M.*, the question here is whether the ALJ improperly cherrypicked evidence from the record such that the RFC is unsupported by substantial evidence.  *Timothy M.*, 2023 WL 3280155, at *5.

In this case, the ALJ found that Plaintiff can perform sedentary work at an implied sustained rate.  *See id.*  Plaintiff argues that there is evidence, as the ALJ acknowledged, that Plaintiff sought treatment for depression.  (ECF No. 12-1 at 13).  Plaintiff continues, "[t]he [Plaintiff's] pursuit of part-time work reflects an effort to engage in limited activity consistent with his impairments, not an ability to perform full-time work." *Id.*  As such, it seems that Plaintiff argues that evidence of mood fluctuation, TMS mental health treatment, and Plaintiff's part-time work support must be addressed in a specific sustained work activity discussion.  *See id.*  The Commissioner argues that because the ALJ addressed each piece of evidence here yet reached an RFC limiting the Plaintiff to sedentary work, Plaintiff's argument amounts to mere disagreement with the ALJ's finding.  (ECF No. 14 at 7).  To that end, the RFC states,

> The claimant stated in the function report mentioned above that he had difficulty engaging in exertional, postural, and manipulative activities due to his impairments. He reported some difficulty with personal care and housework (See Exhibit 3E). At the hearing, he testified that he had difficulty sitting, standing, and walking for prolonged periods. Further, he reported difficulty bending, and he testified to pain in the left hip. Additionally, he testified to depression and associated decreased interest in activities and cognitive difficulties. He stated further that he experienced anxiety and that he had difficulty leaving his house at times and being in crowded places (See Hearing testimony).

After careful consideration of the evidence, I find that the claimant's medically

---

[3] *Shelley C.* is commonly cited for extending the *Arakas v. Commissioner of Social Security* standard to mental health disorders such as depression.  *E.g.*, *Clifford E. v. O'Malley*, 1:23CV704, 2024 WL 3105669, at *7 (M.D.N.C.  June 24, 2024).  The Court remanded this case for contravening *Shelley C.* when the ALJ originally "discounted Plaintiff's subjective complaints, therefore providing an inadequate explanation as to the inconsistencies in the record." (Tr. 1847).  Despite the Court's finding that the reasoning in the ALJ's initial decision denying Plaintiff's claims was analogous to *Shelley C.* for discrediting Plaintiff's subjective statements, the arguments and RFC determination here are different.  *See id.*  First, Plaintiff does not advance such an argument here.  (ECF No. 12-1).  Rather, Plaintiff argues that the ALJ cherrypicked the record and failed to properly address how Plaintiff's depression would affect his ability to perform sedentary work at a sustained rate.

determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the objective medical evidence and other evidence of the record do not support them. The record shows that the claimant reported during the alleged period of disability that his pain was well managed with treatment (See Exhibit 34F/10). The record also shows that he reported that he no longer needed medications for his anxiety and back pain during this period and that he felt well from a psychiatric standpoint, contrary to his alleged level of pain and limitations. He reported considering returning to bartending, attending computer graphics studies, and exploring a career in real estate during this period (See Exhibit 41F/3, 5). The record also shows that he looked for part-time work during this period, which undermines his alleged level of limitations (See Exhibit 42F/27). Thus, the record does not support that he was as limited as alleged.
…
With respect to [Plaintiff's] mental functioning, he remained stable with psychotropic medications. As stated above, he testified at the hearing that he dealt with depression and that he experienced associated decreased interest in activities and cognitive difficulties. He stated further that he had anxiety and associated difficulty leaving his house at times and being in crowded places (See Hearing testimony). However, as noted above, the record reveals that he reported that he no longer needed medications for his anxiety and that he felt well from a psychiatric standpoint. He considered returning to bartending and explored other career options during this period (See Exhibit 41F/3, 5). The record also shows that he looked for part-time work during this period, which undermines his alleged level of limitations (See Exhibit 42F/27). Furthermore, as discussed above, although he had inpatient psychiatric care during the relevant period, he had been of his psychiatric treatment regimen during the period in question, and he responded well to treatment (See Exhibit 3F/16-24). He had stable baseline mental functioning throughout, otherwise (See Exhibit 41F/1-7). Although he exhibited mood abnormalities at times, he generally had normal thought content without suicidal or homicidal ideation and was cooperative on exams. Additionally, he had normal thought process despite deficits in insight and judgment at times. With respect to his cognitive functioning, he demonstrated intact memory, normal attention and concentration, and average fund of knowledge upon mental status evaluations. However, his mood abnormalities could limit his ability to maintain attention and concentration besides limitations in social interaction (See Exhibits 3F/4, 16-24; 6F/15; 20F/97-104; 34F/7-16, 124-129; 35F/40; 38F/56, 39; 41F/1-7, 28, 216; 42F/25). Therefore, in light of the limitations noted in the paragraph B discussion above, I have found that the claimant was limited to simple instructions that would not involve a specific production rate pace, such as assembly line work or an hourly production quota. He could have occasional interaction with coworkers, supervisors, and the general public.

(Tr. 1792). Here, and unlike in the ALJ's initial RFC determination, the ALJ did not discount Plaintiff's subjective allegations based solely on a lack of consistency with the objective medical record. Instead, the ALJ considered Plaintiff's statements at various appointments, his daily activities, and ultimately concluded that Plaintiff was capable of performing sedentary work. Tr. 1792. The Court observes that the ALJ did expressly acknowledge that Plaintiff reported mood abnormalities and evaluated his statements concerning the severity of his mental health in multiple portions of the RFC analysis. Based on the context above, the Court also agrees with the Commission's note that the ALJ considered Plaintiff's part-time bartending job from a functional standpoint, that is, he felt capable of looking for a job. (ECF No. 14 at 8). Although the ALJ did not quote each specific statement to which Plaintiff cites, the Court is satisfied that the ALJ's thorough discussion of the Plaintiff's mental health record in the context of the opinion as a whole does not amount to impermissible cherry-picking. Thus, the Court does not find remand necessary to specifically address whether Plaintiff's mood fluctuations impact a sedentary sustained work activity rate. *Timothy M.*, 2023 WL 3280155, at *5.

Therefore, I will affirm the ALJ's decision on this issue.

b.  <u>The ALJ Properly concluded that Plaintiff's Veinous Insufficiency is Non-Severe</u>

At Step Two, the ALJ found that Plaintiff veinous insufficiency exhibited only a slight abnormality and categorized it as "non-severe." (Tr. 1786). Plaintiff summarizes the medical history underlying his veinous insufficiency and summarily argues that the ALJ's characterization is unsupported by substantial evidence. (ECF No. 12-1 at 14). Plaintiff asks the Court to remand the case so "the ALJ can properly evaluate the claimant's veinous insufficiency as a severe impairment and account for the resulting limitations in his RFC assessment." *Id.* Commissioner argues that the ALJ properly concluded the veinous insufficiency was non-severe and that any error was harmless because the ALJ went on to continue the issue in the RFC. (ECF No. 14 at 11).

To begin, it is true that the ALJ considered the Plaintiff's veinous insufficiency in determining the RFC. Specifically, the ALJ stated, "[a]dditionally, considering his non-severe impairment of venous insufficiency and testimony of associated swelling in the lower extremities, he also required the opportunity to wear compression stocking." (Tr. 1791). "[I]f a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC." *Ramon M. v. Berryhill*, Civil Action No. CBD-18-2025, 2019 WL 2436938, at *6 (D. Md. Jun. 10, 2019) (citing 20 C.F.R. § 404.1523 (2010); SSR 96-8p, 1996 WL 374184, at * 5) (emphasis omitted). Commissioner is correct that "[i]f the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant." *Rivera v. Astrue*, Civ. A. No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. Aug. 22, 2013); *see also Thomas v. Comm'r. Soc. Sec. Admin.*, Civ. No. SAG-11-3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error when the ALJ completed each step in the sequential process and considered both severe and non-severe impairments); *Spitzbarth v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2934, 2018 WL 4705784, at *10 (D. Md. Sept. 28, 2018) (holding an ALJ's failure to conclude that a plaintiff's low IQ score was a severe impairment, the error was harmless because the ALJ considered the low IQ at steps three and four

of her analysis).

Against the backdrop above, the ALJ considered the Plaintiff's veinous insufficiency in reaching the RFC determination and continued in the sequential evaluation process, so any error here is harmless. Therefore, remand is not appropriate on this basis.

Thus, I will affirm the ALJ's decision on this issue.

c.   The ALJ's Discussion of Dr. Gray's Medical Opinion was Proper

Lastly, Plaintiff asks the Court to remand the case because the ALJ found Dr. Gray's medical opinion somewhat persuasive but did not resolve an evidentiary conflict. (ECF No. 12-1 at 15). Plaintiff is correct that SSR 96-8p requires an ALJ to explain why he or she did not adopt a medical opinion if the RFC assessment conflicts with the opinion of that medical source. SSR 96-8p, 1996 WL 374184, at *7. Relevant here, the ALJ found Dr. Kerri Gray, M.D.'s opinion somewhat persuasive. To that end, the ALJ reasoned,

> I find the opinion from Kerri Gray, MD, a treating physician, somewhat persuasive for the reasons stated above. Dr. Gray opined that the claimant could lift and carry twenty pounds on a sustained basis during an eight-hour workday; he could stand and walk for fifteen minutes at a time; he could stand and/or walk or sit for one hour in an eight-hour workday; he would need to elevate his the legs all the time; he could perform postural activities occasionally; he would be off task greater than 20% of the work day; and he would be absent from work more than four days per month.; and that he had had the foregoing limitations since September 18 2018 (See Exhibit 39F). The objective medical evidence generally supports the opined postural limitations but does not warrant the opined degree of limitations in standing and walking, time off task, or absence from work, as it shows normal ambulation throughout, and he remained stable with treatment. In this regard, this opinion is neither consistent with the claimant's reports of adequate control of his pain with treatment and application for part-time employment during this period (See Exhibits 41F/3, 5; 42F/27).

(Tr. 1793). Here, the ALJ has explained that the medical evidence supports the postural limitations but does not support the degree of limitation in functional activity in view of Plaintiff's reports of control of his pain with treatment and considering his part-time employment. Thus, the Court disagrees with Plaintiff that further explanation is necessary or that any failure to explain the ALJ's reasons in greater detail constitutes reversible error. Indeed, ALJs are "are not required to accept all components of a witness' discussion about a claimant's limitations just because the ALJ finds them to be generally persuasive." *Turner v. Comm'r of Soc. Sec.*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024); *Hall v. Comm'r of Soc. Sec.*, No. 1:23-CV-1496 (RDA/WEF), 2025 WL 457820, at *4 (E.D. Va. Feb. 11, 2025) (holding that an ALJ may find a medical opinion persuasive yet reasonably decline to adopt every limitation where the record evidence supports a less restrictive RFC); *Boulden v. O'Malley*, No. 24-1414, 2025 WL 48337, at *5 (4th Cir. Jan. 8, 2025) (explaining that an ALJ is not required to incorporate each limitation from a medical opinion into the RFC so long as the ALJ explains why certain limitations are

8

unsupported by the record).  Here, Plaintiff argues that the ALJ's failure to reconcile each portion of the medical record to which he cites constitutes a clear conflict.  However, these citations generally refer to reports of limited functional activity that the ALJ explained he rejected as inconsistent with his paint treatment and part-time employment.  Moreover, taking the RFC analysis as a whole, the Court does not find an unresolved conflict.

Therefore, I will affirm the ALJ's opinion.

## V.    Conclusion

In sum, the Court agrees with Defendant that the ALJ and subsequently the Appeals Council adequately explained Plaintiff's RFC determination and underlying reasoning.  In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is supported by substantial evidence for the reasons explained above.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is affirmed.  The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____
J. Mark Coulson
United States Magistrate Judge